IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| DARYL DEAN DAVIS, MARK APANA, ELIZABETH VALDEZ KYNE, EARL TANAKA, THOMAS PERRYMAN, and DEBORAH SCARFONE, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) | CIVIL NO. 08-00525 HG-LEK **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFFS' COMPLAINT (DOC. 94)** |
| Plaintiffs, | ) ) |  |
| vs. | ) ) |  |
| FOUR SEASONS HOTEL LIMITED, dba FOUR SEASON RESORT, MAUI and FOUR SEASONS RESORT, HUALALAI, and MSD CAPITAL, INC., | ) ) ) ) ) |  |
| Defendants. | ) ) |  |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFFS' COMPLAINT (DOC. 94)**

Plaintiffs are food and beverage servers employed or formerly employed by two Four Seasons hotels. Plaintiffs filed a Class Action Complaint alleging, in part, that: (1) the Defendants failed to remit the total proceeds of "service charges" imposed on the sale of food and beverages at the Defendants' resorts to the Plaintiffs as tip income; and (2) this constituted a violation of Hawaii Revised Statutes §§ 480-2(e) and 481B-14.

In January of 2009, the Defendants filed a Motion to

1

Dismiss the Plaintiffs' Complaint, arguing in part that Plaintiffs lacked standing to pursue their claims.

On June 2, 2009, this Court certified the following question to the Hawaii Supreme Court:

> Where plaintiff banquet server employees allege their employer violated the notice provision of H.R.S. § 481B-14 by not clearly disclosing to purchasers that a portion of a service charge was used to pay expenses other than wages and tips of employees, and where the plaintiff banquet server employees do not plead the existence of competition or an effect thereon, do the plaintiff banquet server employees have standing under § 480-2(e) to bring a claim for damages against their employer? (Doc. 75).

The Hawaii Supreme Court answered the question as follows:

(1) Plaintiff employees are "any persons" within the meaning of H.R.S. § 480-1 and 480-2(e) and are within the category of plaintiffs who may bring a claim under H.R.S. § 480-2(e) for a violation of H.R.S. § 481B-14; however

(2) Plaintiffs failed to adequately plead the "nature of the competition" to bring a claim for damages against the Four Seasons under H.R.S. § 480-2(e) and 480-13(a) for a violation of H.R.S. § 481B-14. <u>Davis, et al., v. Four Seasons Hotel Ltd, et al.</u>, 228 P.3d 303, 305 (Haw. 2010).

In response to the Hawaii Supreme Court's ruling, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint (Doc. 98), which the Court granted.  In response, the

Defendants have filed a Renewed Motion to Dismiss Plaintiffs'
Complaint (Doc. 94).  Defendants' Renewed Motion to Dismiss
Plaintiffs' Complaint (Doc. 94) is **GRANTED** in part and **DENIED** in
part.


## PROCEDURAL HISTORY

On November 21, 2008, Plaintiffs filed a Class Action
Complaint. (Doc. 1.)

On January 12, 2009, Plaintiffs filed an Amended Class
Action Complaint (Doc. 13.)

On January 30, 2009, Defendants filed an Answer. (Doc.
34.)  On that same day, the Defendants filed a Motion to Dismiss
(Doc. 32).

On March 6, 2009, the Plaintiffs filed a Opposition to
Defendants' Motion to Dismiss (Doc. 46).

On March 13, 2009, the Defendants filed a Reply in
support of their Motion to Dismiss (Doc. 48).

On March 24, 2009, a hearing was held on the
Defendants' Motion to Dismiss.  The Court denied the Motion and
ordered the parties to meet and confer in order to frame an
appropriate question regarding standing to the Hawaii Supreme
Court (Doc. 53).

On June 2, 2009, the Court certified the question of
whether Plaintiffs have standing to pursue their unfair

competition claim under H.R.S. § 480-2(e) for a violation of
H.R.S. § 481B-14 to the Hawaii Supreme Court (Doc. 75).

On June 29, 2009, the Court directed the Clerk's Office
to stay the proceedings and close the case administratively
(Docs. 86, 88).

On March 29, 2010, the Hawaii Supreme Court issued a
ruling on the certified question.  <u>Davis, et al., v. Four Seasons
Hotel Ltd, et al.</u>, 228 P.3d 303, 318 (Haw. 2010).

On April 9, 2010, the Defendants filed a Motion to
Reopen Case from Administrative Closure ("Motion to Reopen Case,"
Doc. 93).  On the same day, the Defendants filed a Renewed Motion
to Dismiss Plaintiffs' Complaint ("Motion to Dismiss," Doc. 94).

On April 19, 2010, Plaintiffs filed a Motion for Leave
to File Second Amended Complaint ("Motion for Leave to Amend,"
Doc. 98) and a Memorandum in Support of their Motion (Doc. 99).
On the same day, Plaintiffs filed a Statement of No Opposition to
Defendants' Motion to Reopen Case (Doc. 100).

On May 6, 2010, the Court granted Defendants' Motion to
Reopen Case (Doc. 102).

On May 12, 2010, Plaintiffs filed an Opposition to
Defendants' Motion to Dismiss ("Opposition to Motion to Dismiss,"
Doc. 103).

On May 17, 2010, the Defendants filed an Opposition to
Plaintiffs' Motion for Leave to Amend ("Opposition to Motion for

4

Leave," Doc. 104).

On May 24, 2010, Plaintiffs filed a Reply in Support of their Motion for Leave to Amend ("Motion for Leave Reply," Doc. 105).

On May 27, 2010, Defendants filed a Reply in Support of their Renewed Motion to Dismiss ("Motion to Dismiss Reply," Doc. 106).

On June 7, 2010, the matter came on for hearing.

On July 26, 2010, Plaintiffs' filed a Motion for Leave to File Notice of Supplemental Authority in support of their Opposition to Defendants' Renewed Motion to Dismiss (Doc. 111).

On July 30, 2010, the Court entered a minute order (Doc. 112) directing the Defendants to respond to the argument raised in the supplemental authority submitted by Plaintiffs.

On August 4, 2010, the Defendants a Response to Plaintiffs' supplemental authority (Doc. 113).

On August 31, 2010, the Court granted Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 121). This Order rules on the sufficiency of the Second Amended Complaint.

On September 4, 2010, Plaintiffs' filed a Second Amended Class Action Complaint (Doc. 122).

## BACKGROUND

Plaintiffs are food and beverage servers employed or

formerly employed by two Four Seasons resorts, including Defendant Four Seasons Hotel, Ltd. on Maui, and Defendant Four Seasons Resort at Hualalai on the Island of Hawaii. Plaintiffs have filed a Second Amended Complaint alleging that during their employment, the Defendants added a mandatory service charge to food and beverage bills for banquets, events, and meetings. (Second Amended Compl. at Section IV., ¶ 5.) Plaintiffs assert that the Defendants did not "remit the total proceeds of the service charge as tip income to the employees who serve[d] the food and beverages." (<u>Id.</u> at ¶ 6.) Defendants allegedly retained a portion of this service charge (or used it to pay managers or other non-tipped employees who do not serve food and beverages) and did not disclose this retention to the resorts' customers, in violation of H.R.S. § 481B-14. (<u>Id.</u> at ¶¶ 7-8.)

Count I of Plaintiffs' Second Amended Complaint alleges that retention of the service charge proceeds, without disclosing this fact to customers, is an unfair method of competition in violation of H.R.S. §§ 480-2(e) and 481B-14. Counts II through V allege claims for Intentional Interference With a Contractual or Advantageous Relationship (Count II), Breach of Implied Contract (Count III), Unjust Enrichment (Count IV), and Unpaid Wages under H.R.S. § 388-6 (Count V).

## LEGAL STANDARDS

### I.    Failure to State a Claim

The Court may dismiss a complaint as a matter of law pursuant to Fed. R. Civ. P. Rule 12(b)(6) where it fails "to state a claim upon which relief can be granted."  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957),

In evaluating a complaint when considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must presume all allegations of material fact to be true and draw all reasonable inferences in favor of the non-moving party.  Roe v. City of San Diego, 356 F.3d 1108, 1111-12 (9th Cir. 2004);  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (the complaint must be liberally construed, giving the plaintiff the benefit of all proper inferences).

Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. Pareto, 139 F.3d at 699; In re VeriFone Securities Litigation, 11 F.3d 865, 868 (9th Cir. 1993) (conclusory allegations and unwarranted inferences are insufficient to defeat a motion to

dismiss for failure to state a claim); <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir.), <u>cert denied</u>, 454 U.S. 1031 (1981) (the Court does not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations"). Additionally, the Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

In <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the United States Supreme Court addressed the pleading standards under the Federal Rules of Civil Procedure in antitrust cases. In <u>Twombly</u>, the Supreme Court stated that Rule 8 of the Federal Rules of Civil Procedure "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," and that "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 555.

Most recently, <u>in Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009), the Supreme Court clarified that the principles announced in <u>Twombly</u> are applicable in all civil cases. In <u>Iqbal</u>, the Court stated that although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-

me-accusation." Id. at 1949.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## ANALYSIS

### I.   DEFENDANTS' RENEWED MOTION TO DISMISS COUNT I

The Defendants move the Court for an order dismissing Plaintiffs' Second Amended Complaint.  The Defendants argue that the Second Amended Complaint fails to establish that Plaintiffs have standing to state an unfair method of competition claim under H.R.S. §§ 480-2, 480-13, 481B-14, in accordance with the Hawaii Supreme Court's answer to this Court's certified question. The Defendants also argue that the remaining counts in Plaintiffs' Complaint fail to state a plausible claim for relief under Iqbal and Twombly, supra.

Part I of this Order discusses the Hawaii Supreme Court's answer to the Court's certified question (hereinafter referred to as the Davis opinion) and the sufficiency of Count I of the Second Amended Complaint in light of the standards set forth in the Davis opinion and those announced by the U.S.

Supreme Court in Twombly and Iqbal.  Part II analyzes the sufficiency of the remaining counts of Plaintiffs Second Amended Complaint under Twombly and Iqbal.

### A.    The Applicable Statutes

The statutes that Plaintiffs bring their unfair method of competition claim under are H.R.S. §§ 481B-14, 481B-4, 480-2, and 480-13.

H.R.S. § 481B-14 states:

> Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

Under H.R.S. § 481B-4, a person who violates chapter 481B, including § 481B-14, "shall be deemed to have engaged in an unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480-2."

Chapter 480 of the Hawaii Revised Statutes governs antitrust law in general.  Section 480-2 declares that unfair methods of competition are unlawful and states:[1] (1) only

---

[1]    H.R.S. § 480-2 states as follows:
Unfair Competition, practices, declared unlawful.

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

consumers, the attorney general, or the director of the office of
consumer protection may bring an action for unfair deceptive acts
or practices, however; (2) claims for unfair methods of
competition may be brought by "any person," as authorized by
H.R.S. § 480-2(e).

H.R.S. § 480-13 allows private individuals injured by a
violation of Hawaii's antitrust laws (set forth in H.R.S. Chapter
480) to sue for monetary damages or injunctive relief."[2]  H.R.S.

———————————————

(b) In construing this section, the courts and the
office of consumer protection shall give due
consideration to the rules, regulations and decisions
of the Federal Trade Commission and the federal courts
interpreting section 5(a)(1) of the Federal Trade
Commission Act (15 U.S.C. 45(a)(1)), as from time to
time amended.

(c) No showing that the proceeding or suit would be in
the public interest (as these terms are interpreted
under section 5(b) of the Federal Trade Commission Act)
is necessary in any action brought under this section.

(d) No person other than a consumer, the attorney
general or the director of the office of consumer
protection may bring an action based upon unfair or
deceptive acts or practices declared unlawful by this
section.

(e) Any person may bring an action based on unfair
methods of competition declared unlawful by this
section.

[2]   H.R.S. § 480-13 dealing with "Suits by injured persons,
amount of recovery," states: (a) Except as provided in
subsections (b) and (c), any person who is injured in the
person's business or property by reason of anything declared
unlawful by this chapter:

(1) May sue for damages sustained by the person,

11

§ 480-13.3 allows plaintiffs to bring such claims in the form of a class action lawsuit.

### B.   The Clayton Act

At the federal level, Section 4 of the Clayton Act, 15 U.S.C. § 15(a) ("Section 4"), operates in the same manner as H.R.S. § 480-13.   Section 4 allows a private individual to bring a claim for damages sustained due to the violation of federal antitrust laws.   Like H.R.S. § 480-13, Section 4 states that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor..." 15 U.S.C. § 15(a).   In practice, section 4 of the Clayton Act is the statutory mechanism by which "any person" brings a claim for the violation of a federal antitrust law, such as sections 1 or 2 of the Sherman Act, just as H.R.S. § 480-13 is the statutory mechanism by which "any person" brings a claim for violations of Hawaii's antitrust laws.

### 1.   Federal Antitrust Injury

Federal courts have held that the "injury to business

---

and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees...[and]

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorney's fees together with the costs of suit.

or property" language of Section 4 is a causation requirement, which requires a showing of "antitrust injury." <u>Brunswick Corp. v. Pueblo Bowl-O-Mat</u>, 429 U.S. 477, 489 (1977).  To establish antitrust injury (and thereby establish standing to sue for such an injury), a plaintiff must show that the injury results "from a competition-*reducing* aspect or effect of the defendant's behavior." <u>Atlantic Richfield Co. v. USA Petroleum Co.</u>, 495 U.S. 328, 341 (1990) (emphasis in original) (finding no injury because the alleged "harm" resulted from lower prices).  "If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal *per se*." <u>Glen Holly Entm't, Inc. v. Tektronix, Inc.</u>, 343 F.3d 1000, 1008 (9th Cir. 2003).

In <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477 (1977), for example, the plaintiffs brought an action under §§ 4 and 7 of the Clayton Act against the manufacturer of bowling equipment, Brunswick, Inc., after Brunswick acquired several failing bowling centers.  The plaintiffs claimed that by acquiring the failing bowling centers, the defendant preserved competition, "thereby depriving [plaintiffs] of the benefits of increased [market] concentration." <u>Id.</u> at 488.  The plaintiffs sought damages for the profits that they allegedly would have earned, had competition been reduced.  <u>Id.</u>  On appeal, the U.S. Supreme Court reversed a jury verdict in favor of the plaintiffs,

reasoning that the antitrust laws "were enacted for the protection of competition not competitors."  Id.

In Blue Shield of Virginia v. McCreedy, 457 U.S. 465, 472-485, on the other hand, the Supreme Court held that the plaintiff, who was an individual subscriber to a Blue Shield prepaid group health plan, had antitrust standing to sue under Section 4 of the Clayton Act for Blue Shield's failure to reimburse her for costs of treatment.  The plaintiff claimed that Blue Shield engaged in a scheme by which it reimbursed participants for treatment for mental health disorders provided by psychiatrists but refused to reimburse for treatment rendered by psychologists.  In finding that the plaintiff had standing to pursue her Section 4 claim, the Court held that her injury reflected "the anticompetitive effect" of the alleged violation, because the scheme would lead to suppressed competition in the psychotherapy market and this suppression was an injury of the type that the antitrust laws were intended to prevent.  Id. at 483.

In cases involving employee plaintiffs who sue a former employer for an alleged antitrust violation, the Ninth Circuit Court of Appeals has held that a plaintiff employee has standing only in very limited circumstances.  In Vinci v. Waste Management, Inc., 80 F.3d 1372 (9th Cir. 1996), the plaintiff, a terminated employee of the defendant company, brought an unfair

competition claim against his former employer under Section 4 of the Clayton Act, alleging that he was terminated for refusing to participate in his employer's anticompetitive scheme to drive a competitor out of business.  Id. at 1373-74.  The court acknowledged the general rule that a terminated employee may not sue his corporate employer under the Clayton Act because termination of employment is not an antitrust injury.  The exception to this rule is in circumstances where: (1) the former employee is an "essential participant" in an anticompetitive scheme; (2) the employee's termination is a "necessary means" to accomplish the scheme; and (3) "the employee has the greatest incentive to challenge the antitrust violation."  Id. at 1376-77 (emphasis added).

### C.   Answer to Certified Question

The Hawaii Supreme Court answered the question of whether the Plaintiffs in this case have standing to bring an unfair method of competition claim under Hawaii law:

#### 1.   Plaintiffs Are "Any Person" Within The Meaning of §§ 480-1 and 480-2(e)

H.R.S. § 480-2(e) states that "any person" can sue for unfair methods of competition.  H.R.S. 480-1 defines "person" to include "individuals, corporations, firms, trusts, partnerships," etc.  The Hawaii Supreme Court held that under the plain language of 480-1 and 480-2(e), the plaintiff employees are "any person" because they are "individuals."  Id. at 309.  The legislative

15

history of H.R.S. 480-2(e)[3] further supported the Court's

conclusion that the Plaintiffs qualified as "any person" under

the statute.

> ## 2. Plaintiff Employees May Bring a Private Action Under H.R.S. § 480-2(e) for a Violation of H.R.S. § 481B-14 If They Satisfy the Requirements of H.R.S. § 480-13.

The Hawaii Supreme Court next determined whether the

Plaintiffs have standing to bring a claim under H.R.S. 480-2(e)

for a violation of § 481B-14.  The Court examined the language of

§ 481B-4, which states that "any person who violates chapter

[481B] shall be deemed to have engaged in an unfair method of

competition and unfair or deceptive act or practice..." The Court

held that nothing in this provision, or in the language of H.R.S.

§ 481B-14, precludes employees from enforcing § 481B-4 and §

481B-14 through § 480-2(e).  <u>Id.</u> at 312.

The Court also examined the legislative history of §

481B-14.  After reviewing this history,[4] the Court concluded

---

[3]    H.R.S. § 480-2 was enacted in 2002 in response to a decision by the Hawaii Supreme in which the Court held that there was no private claim under H.R.S. § 480-13 for unfair methods of competition that violated H.R.S. § 480-2.  <u>See Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.</u>, 982 P.2d 853, 878 (1999).

[4]    The provision was originally intended to "strengthen Hawaii's wage and hour law" and would have amended Hawaii's Wage and Hour statute, H.R.S. § 388-6, instead of Hawaii's Antitrust statute.  <u>Id.</u> at 313. Due to concerns expressed by the Department of Labor and Industrial Relations that the definition of "tips" included in the original version would conflict with federal wage law, the legislature "amended the bill by deleting its contents

that: (1) the legislature was concerned that "both employees and consumers can be negatively impacted" when a restaurant or hotel withholds a services charge; (2) there was no clear indication in the legislative history that the legislature intended to limit enforcement to consumers, businesses, or competitors and to preclude enforcement by employees; and (3) the Plaintiff employees are "persons" under H.R.S. § 480-2(e).  The Court, therefore, held that the Plaintiffs have standing to sue as "persons" under § 480-2(e) for a violation of § 481B-14 **"if** they meet the additional requirements discussed below."  Id. at 314 (emphasis added).

> **3.**  **Plaintiffs Must Sufficiently Allege the "Nature of the Competition" to Bring a Private Unfair Method of Competition Claim Under H.R.S. §§ 480-2(e) and 480-13(a)**

To bring a private unfair method of competition claim under H.R.S. § 480-2(e) and recover monetary damages, the Hawaii Supreme Court stated that the Plaintiff employees in this case "must first satisfy the requirements of H.R.S. § 480-13." Davis, 228 P.3d 303, 314 (citing Flores v. Rawlings Co., LLC, 177 P.3d 341, 350 (2008)("In order for [the defendant's actions]...to be

---

and inserting a new section regarding unfair and deceptive business practices." Id. According to the legislative history, the purpose of the new bill was "to prevent unfair and deceptive business practices," and "enhance consumer protection." Id. The legislative history also expressed concern that employees were not receiving "money intended as a gratuity by the customer." Id. at 314.

actionable by private litigants [pursuant to H.R.S. § 480-2], the threshold requirements of H.R.S. § 480-13 must be satisfied.") H.R.S. § 480-13 states that "any person who is injured in the person's business or property" by an act declared unlawful by Chapter 480 may sue for damages and bring proceedings to enjoin the act or practice. Id.

> ### a.  Hawaii Medical Association v. Hawaii Medical Services Association

In deciding whether the Plaintiffs' Complaint satisfied the requirements of H.R.S. § 480-13, the Hawaii Supreme Court discussed its holding in Hawaii Med. Ass'n. v. Hawaii Med Serv. Ass'n., 148 P.3d 1179 (Haw. 2006)(hereinafter "HMA").[5]  In HMA, the Hawaii Supreme Court held that "the three essential elements to recovery under H.R.S. § 480-13 are: (1) a violation of H.R.S. chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages." Id. at 1216.

_____

[5]  In HMA, the plaintiff, Hawaii Medical Association (HMA), brought suit on its own behalf and on behalf of participating physicians in Hawaii Medical Service Association's (HMSA) network for violations of H.R.S. § 480-2 and tortious interference with a prospective economic advantage.  Id. at 1183. HMA alleged that HMSA engaged in a scheme to avoid making timely and complete payments owed to physician members, after HMA physicians provided medical care to HMSA members pursuant to agreements entered into by the physicians and HMA.  Id. at 1186. HMSA filed a motion for judgment on the pleadings arguing, in part, that HMA's unfair competition claim failed because HMA had not pled any direct injury to its "business or property."  Id. at 1188.  The lower court agreed and HMA appealed.

The Court then decided whether Hawaii Medical Association's (HMA) complaint satisfied element two and properly pled an "injury" to HMA under § 480-13(a).  Id. at 1209-17.  The Court first determined that HMA need not be a "competitor of or in competition with" HMSA in order to have standing under H.R.S. § 480-13(a).  Id. at 1212.  The Court stated that a plaintiff "may bring claims of unfair methods of competition based on conduct that would also support claims of unfair or deceptive acts or practice" if the nature of the competition is sufficiently alleged in the complaint.  Id. at 1215.  The court reasoned that if it did not require a plaintiff to plead the nature of the competition, "the distinction between claims of unfair or deceptive *acts or practices* and claims of unfair *methods of competition* that are based on such acts or practices would be lost," because "the existence of competition is what distinguishes a claim of unfair or deceptive acts or practices from a claim of unfair methods of competition."  Id. at 1213-1214 (emphasis in original).

HMA sufficiently alleged the "nature of the competition," according to the Court, because it described the competition at issue in great detail.  Specifically, HMA alleged that:

> 11.  [HMSA's] conduct has adversely impacted, and continues to adversely impact, members of [HMSA's] plans by, among other things, (a) imposing financial hardships on, and in some cases threatening the continued

viability of, the medical practices run by [the plaintiffs]; (b) threatening the continuity of care provided to patients by [the plaintiffs], as required by sound medical judgment; (c) requiring [the plaintiffs] to expend considerable resources seeking reimbursement that could otherwise be available to provide enhanced healthcare services to [HMSA's] plan members; (d) making it more costly and difficult for [the plaintiffs] to maintain and enhance the availability and quality of care that all patients receive; and (e) increasing the costs of rendering healthcare services in Hawaii as a result of the additional costs incurred and considerable effort expended by HMA members in seeking reimbursement from HMSA for services rendered...

25. <u>Through its market dominance and oppressive conduct</u>, HMSA has improperly and unfairly attempted to impose unconscionably low reimbursements upon physicians. Thus physicians are forced to either accept the unconscionably low reimbursement rates or to simply not contract with HMSA.

26. <u>HMSA dominates the enrollee market in Hawaii with over 65% of Hawaii's population enrolled in one of HMSA's plans. In this regard, HMSA is the largest provider of fee-for-service insurance in the State with more than 90% of the market and is the second largest HMO provider in the State...</u>

27. <u>It is through such market dominance that HMSA is able to dictate the terms and amount of reimbursement HMA physicians will receive</u>. <u>Id.</u> at 1214 (emphasis in original).

The Court also held that HMA sufficiently alleged injury in fact to itself because HMA established that it was injured in its "business or property" by alleging a diminishment of financial resources as a result of HMSA's actions. <u>Id.</u> at 1216.

### 4.   Plaintiff Employees Have Sufficiently Alleged Injury In Fact

In this case, the Hawaii Supreme Court held that the Plaintiff employees alleged an injury in fact to their business or property "because [Plaintiffs] have alleged that their tip income has been reduced due to Four Seasons' allegedly unlawful conduct..." <u>Davis</u>,228 P.3d at 317.

### 5.   Plaintiff Employees Have Failed to Sufficiently Allege the Nature of the Competition

The Hawaii Supreme Court in <u>Davis</u> then analyzed whether Plaintiffs sufficiently alleged the "nature of the competition." The Plaintiffs argued that where there is a per se violation of Hawaii's antitrust or consumer protection laws, as is alleged in this case, a plaintiff need not allege the nature of the competition.  <u>Id.</u> at 438, 441.

The Court responded to this argument by analyzing what effect the "deeming" language of H.R.S. § 481B-4 has on the elements of a claim brought under § 480-2(e) for a violation of § 481B-14.  Specifically, § 481B-4 states that "any person" who violates chapter 481B, which includes § 481B-14, "shall be deemed to have engaged in an unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480-2."

The Court held that, despite the language of § 481B-4, a plaintiff must still comply with the requirements of § 480-13

21

and allege the nature of the competition.  This is because the requirement that the plaintiff <u>allege</u> the nature of the competition is different from the requirement that a defendant's conduct <u>constitute</u> an unfair method of competition.  The latter requirement comes from H.R.S. § 480-2(a), which generally states that methods of unfair competition are unlawful.  <u>Id.</u> at 319.  The requirement that a plaintiff allege the nature of the competition comes from H.R.S. § 480-13, which requires a plaintiff to show that they were harmed "<u>as a result of</u> actions of the defendant <u>that negatively affect competition</u>."  <u>Id.</u> (emphasis added).  The Court stated that by "deeming" a violation of § 481B-14 to be an unfair method of competition, the legislature predetermined that violations of § 481B would constitute per se unfair methods of competition for purposes of § 480-2.  In other words the statute provides that conduct which violates HRS § 481B constitutes an unfair method of competition.  However, by doing so, the Legislature

> did *not* determine that an injury suffered by 'any person' as a result of a violation of chapter 481B <u>necessarily stems from the negative effect on competition caused by the violation</u>.  In other words, the legislature was not making a determination that any person injured as a result of a violation of Chapter 481B automatically has standing to sue pursuant to H.R.S. § 480-2 and 480-13.  Instead, a private person must separately allege the nature of the competition in accordance with this court's holding in HMA (emphasis added).

<u>Id.</u> at 320.

22

**6.    The Injury Must Stem From Behavior That Reduces or Has a Negative Effect on Competition**

The Hawaii Supreme Court in <u>Davis</u> then discussed federal cases involving "per se" anti-trust violations.  The Supreme Court has held that even where a plaintiff alleges a per se violation of the antitrust laws, the plaintiff must still allege and prove antitrust injury by alleging the nature of the competition "in order to ensure that the injury results from a competition-reducing aspect of the defendant's behavior."  <u>Id.</u> at 325 (citing <u>Atlantic Richfield Co. v. USA Petroleum Co.</u>, 495 U.S. 328, 341 (1990).  On this issue, the Court stated that it makes no difference whether the courts or the legislature have "deemed" certain actions to be anticompetitive, "<u>because the purpose of the antitrust injury requirement is to ensure that the plaintiff's alleged injury stems from this anticompetitive aspect, rather than some pro-competitive or neutral effect of the defendant's antitrust violation</u>."  <u>Id.</u> at 325 n. 35 (emphasis added); (see also, <u>Glen Holly Entm't, Inc. v. Tektronix, Inc.</u>, 343 F.3d 1000, 1008 (9th Cir. 2003)("If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se.")

The Court concluded by stating that "embodied in Hawaii's virtually word-for-word adoption" of the prohibitions set forth in the Sherman, Clayton, and FTC Act "is the federal

antitrust laws' focus on commerce, the economy, and preserving competition." Id. at 326.  Hawaii's requirement that a plaintiff allege the "nature of the competition" is, therefore: (1) "consistent with the federal requirement that a plaintiff allege that his or her injury 'reflects the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation;'" and (2) "reflects the underlying purpose of both the federal and Hawaii antitrust laws, which is to preserve unrestrained competition." Id.

In summary, the Davis opinion clarifies that:

(1) Plaintiffs qualify as "persons" who may bring a claim under H.R.S. § 480-2(e);

(2) Plaintiffs have standing to bring a private claim for unfair competition under H.R.S. §§ 481B-14 and 480-2 only if they satisfy the requirements of § 480-13.

(3) The essential elements of a claim under § 480-13 are: (1) a violation of Chapter 480; (2) that causes an "injury" to plaintiffs' business or property; and (3) damages.  To satisfy the second element, plaintiffs must allege an injury in fact and the "nature of the competition."

(4) Plaintiffs sufficiently alleged an injury in fact.

(5) Plaintiffs failed to sufficiently allege the nature of the competition.

(6) Plaintiffs must ultimately show that their injury

"necessarily stems from the negative effect on competition caused by the violation," as opposed to "some pro-competitive or neutral effect of the defendant's antitrust violation."  <u>Id.</u> at 325.

>    **D.    Pleading Standards For Antitrust Claims After <u>Bell Atlantic Corp. v. Twombly</u>**

In addition to the parameters outlined above, the Court must also be cognizant of the pleading standards announced by the U.S. Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>.  As stated above, the Court in <u>Twombly</u> held that on motion to dismiss in an antitrust case, a court must determine whether an antitrust claim is "plausible" in light of basic economic principles.  550 U.S. 544, 556 (2007).

The plaintiff in <u>Twombly</u> filed a putative antitrust class action against incumbent local exchange carriers ("ILECs"), alleging that the ILECs conspired to: (1) avoid competing with one another; and (2) prevent competitors from entering the local telephone and internet service markets.  The Court evaluated "what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act."[6]  <u>Id.</u> at 555.  The Court stated that Rule 8 of the Federal Rules of Civil Procedure "requires more than labels and conclusions, and a formulaic recitation of the

---

[6]    Section 1 of the Sherman Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.

elements of a cause of action," and that "[f]actual allegations
must be enough to raise a right to relief above the speculative
level."  Id. at 555.

     The allegations in the plaintiffs' complaint were
insufficient, according to the Court, because: (1) plaintiffs'
Section 1 claim rested on descriptions of parallel conduct and
not an any independent allegation of an actual agreement among
the defendants; (2) although "a few stray statements" in the
complaint directly alleged an agreement "on fair reading these
[were] merely legal conclusions resting on prior allegations;"
and (3) these facts were insufficient to "nudge[] the[] claims
across the line from conceivable to plausible" without
speculation.  Id. at 565, 569.

     In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the
United States Supreme Court stated that "[a] claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Id. at 1949.
The Court also confirmed that the standards announced in Twombly
apply in all civil cases.  Id. at 1949.

     The Ninth Circuit Court of Appeals applied the
standards announced in Twombly in Kendall v. Visa U.S.A., Inc.,
518 F.3d 1042 (9th Cir. 2008).  In that case, the Plaintiff
merchants brought an antitrust action against credit card

companies and banks, alleging that the defendants had conspired
to fix the amount of card transaction fees charged in retail
transactions in violation of the Sherman Act.  Kendall v. Visa
U.S.A., Inc., 518 F.3d 1042 (9th Cir. 2008).  The U.S. District
Court for the Northern District of California granted the
Defendants' motion to dismiss and the merchants appealed.  The
Ninth Circuit Court of Appeals affirmed, because the plaintiffs
failed to specify in the complaint "who, did what, to whom (or
with whom), where, and when," and instead relied on general
allegations that the defendants "conspired" to fix prices
"without any evidentiary facts to support such [a] conclusion."
Id. at 1048, 1050 (citing Twombly, 127 S. Ct. At 1964-66).  In so
holding, the Court reasoned that because the plaintiff failed to
plead specific facts that supported the existence of a scheme or
conspiracy, the claim was not "plausible" under Twombly.

     E.   Plaintiffs' Second Amended Complaint

          Plaintiffs have added three paragraphs, paragraphs 10-
12, to their Second Amended Complaint.  Paragraph 10 alleges
that: (1) the Defendants' failure to disclose the service charge
or remit it to its employees "has an unlawful competition-
reducing effect upon the hotel and restaurant industry;" (2) non-
disclosure to the customers allows the Defendants to "gain a
competitive advantage over hotels and restaurants" that either
make the required disclosure or remit the service charge to their

servers; and (3) the defendants "have gained" an unfair competitive advantage over competitor hotels that comply because by retaining a portion of the service charge, "the defendants are able to reduce the published cost of their food and beverages by improperly profiting from the imposition of a service charge that their customers would believe is used in full to pay [the] gratuity."  (Second Amended Compl. at ¶ 10.)

Paragraph 11 alleges that: (1) the Defendants "are competing with plaintiffs for the amount of money customers are willing to pay for food and beverage service;" and (2) "[b]y not disclosing to customers that service charges are not paid in full to the wait staff employees, the defendants are gaining an improper competitive advantage over plaintiffs" with respect to the amount of the gratuity that customers are willing to pay. (Second Amended Compl. at ¶ 11.)

Paragraph 12 alleges that the Defendants' failure to remit the entire service charge to its employees as tip income has resulted in a loss of tip income for the Plaintiffs and is "inextricably intertwined" with the Plaintiffs' injury because: (1) Plaintiffs have not received the total proceeds of the service charge, which they claim is legally their tip income; and (2) Plaintiffs have not received tips that customers would otherwise have left if the customers were told that the Plaintiffs did not get to keep the entire service charge.

(Second Amended Compl. at ¶ 12.)

>    **1.    Paragraph 11 of Plaintiffs' Second Amended**
>    **Complaint Fails to Adequately Plead the Nature of**
>    **the Competition**

In determining whether paragraphs 10 through 12 of

Plaintiffs' Second Amended Complaint contain sufficient

allegations regarding the "nature of the competition," the

question is whether the Plaintiffs have shown that their injuries

"stem from the negative effect on competition caused by the

violation," as opposed to "some pro-competitive or neutral effect

of the defendant's antitrust violation." Davis, 228 P.3d at 325.

The allegations in paragraphs 10 through 12 must be measured

pursuant to these standards as set forth in the Davis Opinion.

Paragraph 10 of the Second Amended Complaint, unlike

the allegations made by the plaintiffs in HMA, which contained a

detailed explanation as to why HMSA's conduct negatively affected

competition in the medical insurance and medical services

markets, does not contain a detailed explanation as to how the

Defendants' actions have an effect on the relevant market or

reduce competition.  There are minimal allegations that will

require fleshing out by the Plaintiffs as the case progresses.

Although the Court will allow Plaintiffs to proceed based upon

the allegations in paragraph 10, Plaintiffs will be required to

prove at trial that their injuries "stem from the negative effect

on competition caused by the violation," as opposed to "some pro-

competitive or neutral effect of the defendant's antitrust violation." <u>Davis</u>, 228 P.3d at 325.

The allegations in paragraph 11 do not meet the standard applied to paragraph 10.  Plaintiffs allege that they are competing with the Defendants for the money customers are willing to leave for tips, and the violation of § 481B-14 provides the Defendants with an unfair competitive advantage over the Plaintiffs. (Second Amended Compl. at ¶ 11.)  According to the <u>Davis</u> opinion, as stated above, a plaintiff's injury must "stem[] from the negative effect on competition caused by the violation." <u>Id.</u> at 320.  In other words, the plaintiff's injury cannot be directly caused by the violation itself.  The injury must be caused by the negative <u>effect</u> on competition that the alleged violation <u>causes</u>, so as to ensure that the injury is not instead caused by some pro-competitive or neutral effect of the defendant's conduct.  This is true even where the alleged conduct is illegal per se.  <u>Id.</u> at 325 (citing <u>Atlantic Richfield Co. v. USA Petroleum Co.</u>, 495 U.S. 328, 341 (1990) ("Although a vertical, maximum price fixing agreement is unlawful under § 1 of the Sherman Act...[a]ntitrust injury does not arise for purposes of § 4 of the Clayton Act until a private party is adversely affected by an *anticompetitive* aspect of the defendant's conduct." <u>Id.</u> (emphasis in original)); <u>Glen Holly Entm't, Inc. v.</u>

Tektronix, Inc., 343 F.3d 1000, 1008 (9th Cir. 2003)[7]("If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal *per se*.")

Here, the Plaintiffs allege that they were injured by the violation of H.R.S. § 481B-14 itself, not by a negative effect on competition that the violation of H.R.S. § 481B-14 caused. No case law or other authority has been produced to support Plaintiffs' allegation that they were "competing" with their own employer for tips, that there is a competitive "market" for tips, or that the Defendants are a part of this market, such that the Defendants' conduct could have had a negative effect on competition in such a market.

In paragraph 12 of the Second Amended Complaint, the Plaintiffs allege that their injuries "flow directly from the

---

[7]     In Glen Holly Entm't, Inc. v. Tektronix, Inc., 343 F.3d 1000, 1008, the plaintiff filed suit under Section 4 of the Clayton Act for violations of the Sherman Act against two manufacturers of film editing equipment. The plaintiff alleged that the defendants entered into an agreement to jointly market certain products and to prohibit one of the manufacturers from selling the products to certain customers, including the plaintiff. Id. at 1005-1006. The plaintiff alleged that this caused the plaintiff to lose its customers and violated sections 1 and 2 of the Sherman Act because it was a "contract or conspiracy" that created a monopoly and destroyed competition, thereby constituting a per se violation of the Sherman Act. The Ninth Circuit Court of Appeals held that the plaintiff's allegations of injury were sufficient because they "stem[med] from a competition-reducing aspect or effect of [the defendants'] behavior." Id. at 1014.

Defendants' anticompetitive acts and are inextricably intertwined" with those acts.  Plaintiffs argue that they can establish an antitrust injury under <u>Blue Shield of Virginia v. McCreedy</u>, 457 U.S. 465 (1982) by showing that their injury is "inextricably intertwined" with the injury the Defendants seek to inflict on the relevant market.  (Pls. Mot. to Amend, p. 11.)

As discussed in Section B, supra, in <u>Blue Shield</u>, the U.S. Supreme Court held that the plaintiff had standing because her injury reflected "the anticompetitive effect" of the alleged violation and was "inextricably intertwined with the injury the conspirators sought to inflict on the psychologists and the psychotherapy market." <u>Id.</u> at 484.  The Hawaii Supreme Court has not expressly adopted the "inextricably intertwined" standard for purposes of § 480-13 and 481B-14.  In the <u>Davis</u> opinion, the court acknowledged and even discussed <u>Blue Shield</u>.  Although it could have, given the similarities in language between § 4 of the Clayton Act and H.R.S. § 480-13, the Hawaii Supreme Court did not hold that an injury that is "inextricably intertwined" with an allegedly unfair method of competition satisfies the standards of H.R.S. § 480-13.  Given the similarities between § 4 of the Clayton Act and H.R.S. § 480-13 and the fact that the Hawaii Supreme Court discussed <u>Blue Shield</u> favorably, the Court will allow Plaintiffs to proceed on the inextricably intertwined allegations contained in paragraph 12.

**2.   The Allegations in Paragraphs 10 and 12 of Plaintiffs' Second Amended Complaint Are on the Borderline of Plausibility**

There is no explanation in Plaintiffs' Second Amended Complaint as to how using money from service charges to lower published food and beverage prices has any effect on the market that is economically plausible under <u>Twombly</u>.  Numerous factors go into a patron's decision as to where he or she will host an event; price is only one of those factors.  Even assuming that price is the only factor, if the Four Seasons uses the service charge to <u>lower</u> its food and beverage prices, this would potentially have a positive effect on competition because it would encourage other hotels and restaurants to be more competitive by doing the same.  As the U.S. Supreme Court stated in <u>Atlantic Richfield Co. v. USA Petroleum Co.</u>, 495 U.S. 328 (1990), "[l]ow prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition."

Assuming the "injury" Plaintiffs complain of is that the Four Seasons gains an unfair competitive advantage over rival hotels and restaurant establishments, there will need to be proof that there is a competitive advantage that affects and/or injures competition in the overall marketplace, for Plaintiffs to prevail under H.R.S. § 480-13.

Under the inextricably intertwined theory of recovery,

Plaintiffs must first prove that an injury exists that the Defendant "sought to inflict" on competitors, before Plaintiffs can establish that their injury is inextricably intertwined with this injury.  See Blue Shield, 457 U.S. at 484 (holding that plaintiff had standing because her injury was "inextricably intertwined with the injury the conspirators sought to inflict on the psychologists and the psychotherapy market.") If the evidence establishes Defendants practice did, in fact, lead to lower food and beverage prices, but the lowering of food and beverage prices did not cause injury to competition, then Plaintiffs cannot recover under this theory.  ( Glen Holly Entm't, Inc. v. Tektronix, Inc., 343 F.3d 1000, 1008 (9th Cir. 2003) ("If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se.")

The Motion to Dismiss is DENIED as to Count I.


## II.  DEFENDANTS' RENEWED MOTION TO DISMISS REMAINING CLAIMS

The Defendants also move the Court to dismiss the remaining Counts in Plaintiffs' Second Amended Complaint, arguing that the Plaintiffs have failed to make the allegations necessary to state a claim for: (1) Intentional Interference With a Contractual or Advantageous Relationship (Count II); (2) Breach of Implied Contract (Count III); (3) Unjust Enrichment (Count

IV); and (4) Unpaid Wages under H.R.S. § 388-6 (Count V).


###   A.   Intentional Interference With a Contractual or Advantageous Relationship

To state a claim for tortious interference with a prospective business advantage, a plaintiff must allege: (1) the existence of a valid business relationship or a prospective advantage or expectancy that is reasonably probable of maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.  Meridian Mortgage., Inc. v. First Hawaiian Bank, 122 P.3d 1133, 1145-46 (Haw. App. 2005).

Plaintiffs allege in their Second Amended Complaint that "[t]he defendants' conduct as set forth above in failing to remit the total proceeds of service charges to [Plaintiffs] constitutes unlawful intentional interference with contractual and/or advantageous relationships...between the[] employees and the defendants' customers under state common law.  There are sufficient facts in the body of the Complaint to support elements 1, 2, 4, and 5.  There is no allegation, however, that the Defendants purposely intended to interfere with the allegedly advantageous expectancy or relationship between the Plaintiffs

and the Defendants' customers.   The Defendants' Motion to Dismiss Count II is **GRANTED**.

### B.   Breach of Implied Contract

To state a claim for breach of an implied contract, a plaintiff must allege the breach of "an agreement in fact," which is not expressed but "is implied or presumed" based upon the actions of the parties.   Kemp v. State of Hawaii Child Support Enforcement Agency, 111 Hawaii 367, 391 (2006).   The Supreme Court of Hawaii has held that an implied contract can be found "where the intentions of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts."   Durette v. Aloha Plastic Recycling, Inc., 100 P.3d, 74 (Haw. 2004).

In this case, the Plaintiffs allege that the Defendants "breached an implied contract with the plaintiffs that [they] would comply with the law and distribute the total proceeds of service charges to food and beverage servers." (See Second Amended Compl. at p. 10.)   Assuming the allegations in the Second Amended Complaint are true, it is plausible that a jury could find that the employment relationship between Plaintiffs and the Defendants created an implied obligation on the part of the Defendants to comply with H.R.S. § 481B-14.   The Defendants' Motion to Dismiss Count III is **DENIED**.

### C.   Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege that: (1) the defendant received a benefit from the plaintiff; and (2) allowing the defendant to retain the benefit would be unjust.  Durette v. Aloha Plastic Recycling, Inc., 100 P.3d 60, 74 (Haw. 2004).

Here, the Plaintiffs allege that the Defendants' conduct in accepting the benefit of Plaintiffs' work while collecting and retaining a service charge that customers expected and intended to be distributed to the Plaintiffs constituted unjust enrichment. (See Second Amended Compl. at p. 10, ¶¶ 6-9, Count IV.) It is plausible that these facts, if proven true, constitute unjust enrichment.  The Defendants' Motion to Dismiss Count IV is **DENIED**.

### D.   Unpaid Wages

H.R.S. § 388-6, entitled "Withholding of Wages," states: "[n]o employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process..."  For purposes of § 388-6, "wages" includes tips and gratuities.  H.R.S. § 388-1.

Plaintiffs argue that: (1) H.R.S. § 481B-14 requires an employer to distribute service charges to employees as "tip income" unless the employer discloses its retention of the service charge to customers; (2) this "tip income" falls under

the definition of "wages" according to H.R.S. § 388-1; and (3) since the Defendants have failed to make the required disclosure to customers, they have retained "tip income" in violation of H.R.S. § 388-6.

Count V of the Complaint states that as a result of the Defendants' failure to remit the entire proceeds of the service charge to the Plaintiffs, "the Plaintiffs have been deprived of income which constitutes wages, which is actionable under [H.R.S.] § 388-6, 10, and 11." (<u>See</u> Second Amended Compl. at p. 10.)  The Complaint further states that the Plaintiffs "bring a claim for unpaid wages, including liquidated damages, interest, and attorneys' fees." <u>Id.</u>  Based on the language of the relevant statutes, Plaintiffs allegations are sufficient to state a plausible claim for unpaid wages under H.R.S. § 388-6.  The Defendants' Motion to Dismiss Count V is **DENIED**.

<u>**CONCLUSION**</u>

Paragraphs 10 and 12 of Plaintiffs' Second Amended Complaint establish that Plaintiffs have standing to bring a claim for unfair methods of competition under H.R.S. § 481B-14, 480-2, and 480-13 (Count I).  Paragraph 11 of the Complaint does not sufficiently allege the nature of the competition, such that

Plaintiffs have shown that their alleged injury was caused by conduct that has a negative effect on or reduces competition. Plaintiffs will be permitted to proceed on Count I of the Complaint but only based upon the allegations set forth in paragraphs 10 and 12.

Plaintiffs' Second Amended Complaint fails to state a claim for Intentional Interference With a Contractual or Advantageous Relationship (Count II). The remaining claims for Breach of Implied Contract (Count III), Unjust Enrichment (Count IV), and Unpaid Wages (Count V) are sufficiently pled. Defendants' Renewed Motion to Dismiss (Doc. 94) is **GRANTED** in part and **DENIED** in part.

IT IS SO ORDERED.

DATED: September 30, 2010, Honolulu, Hawaii.



/S/ Helen Gillmor
_____
Helen Gillmor
United States District Judge

_____
DAVIS et al. v. FOUR SEASONS HOTEL LIMITED et al.; Civ. No. 08-00525 HG-LEK; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION TO DISMISS (DOC. 94)**