IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DARYL DEAN DAVIS; MARK APANA;        )    Civ. No. 08-00525 HG-BMK
ELIZABETH VALDEZ KYNE; EARL          )
TANAKA; THOMAS PERRYMAN;             )
DEBORAH SCARFONE; on behalf of       )
themselves and all others           )
similarly situated,                  )
                                     )
          Plaintiffs,                )
                                     )
     vs.                             )
                                     )
FOUR SEASONS HOTEL LIMITED,          )
dba FOUR SEASONS RESORT, MAUI        )
and FOUR SEASONS RESORT,             )
HUALALAI; MSD CAPITAL, INC.,         )
                                     )
          Defendants.                )
_____

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT,
FILED ON APRIL 4, 2011 (DOC. 132)**

Plaintiffs filed a five-count Second Amended Class Action Complaint alleging: unfair methods of competition in violation of Hawaii Revised Statutes ("H.R.S.") §§ 480-2(e), 481B-14 (Count 1); intentional interference with contractual or advantageous relations (Count 2); breach of implied contract (Count 3); unjust enrichment (Count 4); and unpaid wages in violation of H.R.S. §§ 388-6, 10, 11 (Count 5). Plaintiffs filed a Motion for Partial Summary Judgment on Count 5 as to Defendant Four Seasons Hotel, Limited's ("Defendant" or "Four Seasons") liability for unpaid wages, but not

1

as to the amount of resulting damages.

Plaintiffs' Motion for Partial Summary Judgment, filed on April 4, 2011, for liability on Count 5 for unpaid wages in violation of H.R.S. §§ 388-6, 10, 11, is **GRANTED.**

## PROCEDURAL HISTORY

On November 21, 2008, Plaintiffs filed a Class Action Complaint. (Doc. 1).

On January 12, 2009, Plaintiffs filed an Amended Class Action Complaint. (Doc. 13).

On January 30, 2009, Defendant Four Seasons Hotel, Limited filed a Motion to Dismiss. (Doc. 32).

On March 24, 2009, a hearing was held on Defendant's Motion to Dismiss. (See Doc. 53).  The Court denied the Motion and ordered the parties to meet and confer in order to frame an appropriate question to the Hawaii Supreme Court regarding Plaintiffs' standing. (See Doc. 53).

On June 2, 2009, the Court certified the question to the Hawaii Supreme Court regarding Plaintiffs' standing to pursue their unfair competition claim under H.R.S. § 480-2(e) for a violation of H.R.S. § 481B-14. (Doc. 75).

On July 28, 2009, the Court directed the Clerk's Office to close the case administratively, while the matter was before the Hawaii Supreme Court. (Doc. 88).

On March 29, 2010, the Hawaii Supreme Court issued a ruling on the certified question.  <u>Davis, et al., v. Four Seasons Hotel Ltd, et al.</u>, 228 P.3d 303 (Haw. 2010).

On April 9, 2010, the Defendant filed a Motion to Reopen the Case. (Doc. 93).  On the same day, the Defendant filed a Renewed Motion to Dismiss Plaintiffs' Complaint. (Doc. 94).

On April 19, 2010, Plaintiffs filed a Motion for Leave to File Second Amended Complaint. (Doc. 98).  On the same day, Plaintiffs filed a Statement of No Opposition to Defendant's Motion to Reopen Case. (Doc. 100).

On May 6, 2010, the Court granted Defendant's Motion to Reopen Case. (Doc. 102).

On August 31, 2010, the Court granted Plaintiffs' Motion for Leave to File Second Amended Complaint. (Doc. 121).

On September 3, 2010, Plaintiffs filed a Second Amended Class Action Complaint. (Doc. 122).

On September 30, 2010, the Court issued an Order Granting In Part And Denying In Part Defendant's Renewed Motion to Dismiss. (Doc. 125).  The Court ruling applied to the Second Amended Complaint. (<u>See</u> Doc. 125 at 5).

On November 3, 2010, Defendant filed an Answer to the Second Amended Complaint. (Doc. 126).

On April 4, 2011, Plaintiffs filed a Motion for Partial Summary Judgment as to Count 5 (Doc. 132) and a Memorandum in

Support (Doc. 134).

On May 10, 2011, Defendant filed an Opposition. (Doc. 141).

On May 24, 2011, Plaintiffs filed a Reply. (Doc. 144).

On June 21, 2011, a hearing was held on Plaintiffs' Motion for Partial Summary Judgment. (Doc. 151).

## BACKGROUND

Plaintiffs are food and beverage servers who have worked at the Four Seasons Resort, Maui (the "Maui resort"), and the Four Seasons Resort, Hualalai (the "Hualalai resort"). (Second Amended Complaint at ¶ 1 (Doc. 122); Defendant's Answer at 3, ¶ 1 (Doc. 126)). Defendant Four Seasons Hotel, Limited is responsible for managing both resorts. (Defendant's Answer at ¶ 3 (Doc. 126); Plaintiffs' Reply in Support of Motion for Partial Summary Judgment at 16 (Doc. 144)). Defendant MSD Capital, Inc. has an ownership interest in the two resorts. (Second Amended Complaint at ¶ 4 (Doc. 122); Defendant's Answer at ¶ 4 (Doc. 126)). Defendant MSD Capital, Inc. has not appeared, and there is no evidence that it was ever served.

Plaintiffs claim that Four Seasons adds a "service charge" to resort customers' food and beverage bills, which ranges from 18 to 22 percent of the food and beverage bill total. (Plaintiffs' Statement of Facts at ¶¶ 2-3 (Doc. 133)). According to the Complaint, a portion of the service charge is distributed to

4

services employees, and another portion is retained by Four Seasons. (Id. at ¶ 4). Four Seasons does not dispute that resort customers are billed an 18 to 22 percent service charge, and that it retains a portion that is not distributed to service employees. (Defendant's Statement of Facts at ¶¶ 1-4 (Doc. 140)). Four Seasons disputes that it is responsible for this practice. (Id.). Four Seasons maintains that it does not "operate" the resorts on a "day-to-day basis." (Defendant's Statement of Facts at ¶ 1 (Doc. 140)). According to Four Seasons, the "day-to-day" operation of the Maui resort is performed by 3900 WA Associates, LLC, and the "day-to-day" operation of the Hualalai resort is performed by Hualalai Investors, LLC. (Defendant's Answer at ¶ 3 (Doc. 126)).

Plaintiffs' claims for relief are all based on an allegation that Four Seasons failed to disclose to customers, prior to the filing of this lawsuit, that the service charges were not remitted in full to the employees who serve the food and beverages. (Second Amended Complaint at ¶¶ 8-9 (Doc. 122); Plaintiffs' Statement of Facts at ¶ 5 (Doc. 133)). Plaintiffs maintain that customers are misled into believing that the entire service charge is distributed to the service employees, and that customers who would otherwise be inclined to leave an additional gratuity do not do so. (Second Amended Complaint at ¶ 9 (Doc. 122)).

**STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.   The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325.   The moving party must, however, show that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.   That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity

6

Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).  Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed.R.Civ.P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). Nor can the opposing party rest on conclusory statements. National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

**ANALYSIS**

In Count 1, Plaintiffs claim that Four Seasons' failure to

disclose that service charges were not remitted in full to service employees constitutes an unfair method of competition in violation of Hawaii Revised Statutes (hereinafter "H.R.S.") §§ 480-2(e), 481B-14.   In Counts 2-4, Plaintiffs claim that the practice constitutes: intentional interference with a contractual or advantageous relationship (Count 2); breach of an implied contract (Count 3); unjust enrichment (Count 4); and unpaid wages in violation of H.R.S. §§ 388-6, 10, 11 (Count 5).

Plaintiffs Move for Partial Summary Judgment on Count 5 as to Four Seasons' liability for unpaid wages, but not as to the amount of resulting damages.  Plaintiffs argue that decisions from several courts establish that Four Seasons' service charge practice violates H.R.S. § 388-6, which prohibits "Withholding of Wages." According to Plaintiffs, H.R.S. § 388-6, when interpreted in conjunction with H.R.S. § 481B-14, requires hotels and restaurants to distribute service charges on food or beverages to employees as tip income or clearly disclose to purchasers that the service charge is being used for other purposes.  Plaintiffs maintain that the facts relevant to this claim are not in dispute.

The Court expressly ruled that Plaintiffs' allegations state a claim for unpaid wages under H.R.S. § 388-6 when denying Four Seasons' Renewed Motion to Dismiss as to Count 5.  Nevertheless, the bulk of Four Seasons' Opposition consists of a lengthy argument that Plaintiffs have failed to state a claim under H.R.S. § 388-6. Four Seasons effectively asks the Court to reconsider its previous

8

ruling.   Alternatively,  Four  Seasons  requests  that  the  Court certify  the  question  to  the  Hawaii  Supreme  Court.   Four  Seasons also  argues  that  it  cannot  be  liable  for  violating  H.R.S.  § 388-6 because  the  statute  prohibits  an  "employer"  from  withholding  wages, and  it  was  not  the  Plaintiffs'  "employer."   Finally,  in  a  footnote, Four  Seasons  argues  that  the  Plaintiffs  are  barred  from  seeking redress  due  to  mandatory  arbitration  clauses  in  their  employment contracts.

## I.   Liability for Unpaid Wages Pursuant to H.R.S. §§ 388-6, 10, 11

H.R.S.  § 388-6,  concerning  "Withholding  of  wages,"  provides  in relevant  part:

> No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee . . . .

An  employer  who  "fails  to  pay  wages  in  accordance  with  this  chapter without  equitable  justification"  is  liable  to  the  affected  employee for  a  sum  equal  to  the  amount  of  unpaid  wages,  in  addition  to  the wages  due.  H.R.S.  § 388-10.   The  Hawaii  legislature  enacted sections  388-6  and  388-10  to  "encourage  employers  to  pay  wages promptly,  reduce  an  employee's  economic  losses,  and  strengthen  the law."  Schefke v. Reliable Collection Agency, Ltd., 32 P.3d 52, 67 (Haw. 2001)  (internal  citations  and  quotation  marks  omitted).

Chapter  388  defines  "wages"  as  "compensation  for  labor  or

services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation." H.R.S. § 388-1.  H.R.S. § 388-1 makes clear that for the purposes of the prohibition on the withholding of wages in section 388-6, "wages" include "tips or gratuities of any kind." Id.  Section 388-11 provides employees with a cause of action to recover unpaid wages, including a class action. H.R.S. § 388-11(a).

Plaintiffs argue that the "service charge" that Four Seasons billed to resort customers should have been distributed in full to the service employees as tip income.  Plaintiffs maintain that Four Seasons violated H.R.S. § 388-6 by withholding a portion of the service charge.  Plaintiffs cite H.R.S. § 481B-14, which provides:

> Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay costs or expenses other than wages and tips of employees.

Plaintiffs argue that Four Seasons retained a portion of their "tip income" in violation of section 481B-14, and is therefore liable for withholding wages under section 388-6.

Although Chapter 388 defines "wages" as "compensation for labor or services" and provides that wages include "tips" for purposes of section 388-6, Chapter 388 does not make reference to "service charges" or reference how they must be distributed. H.R.S. § 1-16, however, provides:

> Laws in pari materia, or upon the same subject matter,

10

shall be construed with reference to each other.  What is clear in one statute may be called in aid to explain what is doubtful in another.

See also State v. Rauch, 13 P.3d 324, 331 (Haw. 2000).  Section 481B-14 of the Hawaii Revised Statutes was originally drafted as an amendment to section 388-6, and it plainly addresses a similar subject matter.  See Davis v. Four Seasons, 228 P.3d 303, 313 (Haw. 2010).  The title of the bill that was eventually signed into law as H.R.S. § 481B-14, entitled "Relating to Wages and Tips of Employees," makes the similarity in subject matter very clear.[1] See id.  As section 481B-14 is a law "in pari materia" with section 388-6, it is proper that it be called in as a reference to aid in interpreting section 388-6. H.R.S. § 1-16; Rauch, 13 P.3d at 331.

Section 481B-14 requires "service charges" for the sale of food or beverage services to be included as "tip income" unless the employer clearly discloses to customers that they will not be.  When statutory language is "plain and unambiguous," as with section 481B-14, a court's "sole duty is to give effect to its plain and obvious meaning." State v. Ribbel, 142 P.3d 290, 295 (Haw. 2006) (quoting Peterson v. Hawaii Elec. Light Co., Inc., 944 P.2d 1265, 1270-71 (Haw. 1997)).  Under the plain language of section 481B-14, withholding service charges from employees without disclosing it to customers constitutes the withholding of "tip income."  H.R.S. §

---

[1]Article III, Section 14, of the Hawaii Constitution provides: "No law shall be passed except by bill. Each law shall embrace but one subject, which shall be expressed in its title."

388-6 prohibits employers from withholding income.[2] Accordingly, if Four Seasons withheld income in violation of section 481B-14, then Four Seasons also withheld wages in violation of section 388-6.

One Hawaii state court and two District Judges of this Court have considered the same issue raised here. May employees assert a claim for unpaid wages under H.R.S. § 388-6 based on a violation of H.R.S. § 481B-14? In <u>Gurrobat v. HTH Corporation, et al.</u>, Civ. No. 08-1-2528-12 (KKS) (Haw. Ct. 1st Cir. 2010), a Hawaii state trial court granted summary judgment to an employee plaintiff who asserted a claim that was identical in all material respects to the claim before this Court. The state court Judge concluded that sections 388-6 and 481B-14 should be read in conjunction because they are laws "in pari materia, or upon the same subject matter." (Transcript of November 17, 2010 hearing in <u>Gurrobat</u>, Exhibit 3 to Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment at 7 (Doc. 134-3)).

The <u>Gurrobat</u> court examined the legislative history of section 481B-14 and noted that it was originally drafted as an amendment to section 388-6. (<u>Id.</u> at 9). Although it was eventually codified in a different statute, the state trial Judge concluded that the

_____

[2]H.R.S. 388-6 provides two exceptions: an employer may withhold income where authorized by federal or state statute or court process, or when authorized in writing by the employee. Neither exception has been claimed in the matter before the Court.

12

legislative history reflected that it was intended to protect service workers. (Id. at 8). He referenced a report from the House Committee on Labor & Public Employment, stating that section 481B-14 was originally drafted with the intent to "protect employees who receive or may receive tips or gratuities." H. Stand. Comm. Rep. No. 479-00, in 2000 House Journal, at 1155.

Rodriquez v. Starwood Hotels & Resorts, Civ. No. 09-0016-LEK-RLP (D. Haw. 2010), is a case raising similar issues as the one before the Court.  The District Judge ruled that an employee may assert a claim for unpaid wages under H.R.S. § 388-6 based on an allegation that the employer withheld service charges in violation of H.R.S. § 481B-14. (Order Granting In Part and Denying in Part Defendant's Motion to Dismiss in Rodriquez, Exhibit 1 to Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment at 55 (Doc. 134-1)).[3]  "Based on the plain language of the statutes," the court concluded, "Plaintiffs' allegations suffice to state a cause of action under § 388-6." Id. at 55.

In Wadsworth v. KSL Grant Wailea Resort, Inc., 2010 WL 5146521, at *12 (D. Haw. 2010), another similar case, the District Judge ruled:

> [B]ecause for purposes of H.R.S. § 388, the statutory definition of wages includes tips, and because pursuant to H.R.S. § 481B-14 a service charge received by the employers without notice to the customers is deemed a

---

[3]The order can be found in Rodriquez v. Starwood Hotels & Resorts, Civ. No. 09-0016-LEK-RLP, (D. Haw. 2010) (Doc. 93).

tip, the employer holds that tip in trust for the employees as a conduit. Therefore, the employees have a claim against the employer for compensation that has been withheld.

This Court previously ruled, when denying Defendant Four Seasons' Renewed Motion to Dismiss as to Count 5, "[b]ased on the language of the relevant statutes, Plaintiffs' allegations are sufficient to state a claim for unpaid wages under H.R.S. § 388-6." Davis v. Four Seasons Hotel Ltd., 2010 WL 3946428, at *15 (D. Haw. 2010).

Four Seasons cites no authority that contradicts the referenced rulings. Four Seasons attempts to rely on the Hawaii Supreme Court's decision in Davis v. Four Seasons Hotel Ltd., 228 P.3d 303 (Haw. 2010), and the legislative history of Chapter 480. Four Seasons argues that these sources reflect that section 481B-14 was not intended to protect service employees or to give them a right to sue.

Neither the Hawaii Supreme Court's ruling in Davis nor the legislative history of Chapter 480 provide grounds to disregard the plain language of sections 388-6 and 481B-14. In Davis, the Hawaii Supreme Court considered whether employees have standing to bring a claim **under H.R.S. § 480-2(e)** for a violation of H.R.S. § 481B-14. 228 P.3d at 303. That issue is entirely distinct and separate from the question of whether H.R.S. § 388-6, concerning the withholding of wages, should be interpreted with reference to H.R.S. § 481B-14. The Hawaii Supreme Court provided no indication

14

in <u>Davis</u> that service charges do not constitute tip income under section 388-6, or that section 388-6 should not be interpreted in a manner that is consistent with the plain meaning of section 481B-14; that issue was simply not before the court. <u>Id.</u> at 308 n. 12 ("Employees also contend that Employees can enforce HRS § 481B-14 through HRS §§§ 388-6, 10, and 11.  However, this argument will not be addressed because it is beyond the scope of the certified question.")

The legislative history of Chapter 480 also does not provide a reason to ignore the plain language of the statutes.  The legislative history of Chapter 480 is only relevant to the extent that the meaning of sections 388-6 and 481B-14 is ambiguous. <u>See</u> <u>T-Mobile USA, Inc. v. County of Hawaii Planning Comm'n</u>, 104 P.3d 930, 939 (Haw. 2005) ("It is well-settled in this jurisdiction that courts turn to legislative history as an interpretive tool only where a statute is unclear or ambiguous.") (internal citation omitted); <u>State v. Yamada</u>, 57 P.3d 467, 478 (Haw. 2002) ("[I]nasmuch as the statute's language is plain, clear, and unambiguous, our inquiry regarding its interpretation should be at an end."); <u>see also</u> <u>Davis</u>, 228 P.3d at 312 ("As a threshold matter, we observe that the plain language of H.R.S. § 481B-14 is inconsistent with Four Seasons' argument that Employees cannot . . . sue for a violation of H.R.S. 481B-14.").

Sections 388-6 and 481B-14 are not ambiguous.  The meaning of

these statutes, when read in conjunction in accordance with H.R.S. § 1-16, is quite clear.  As the District Judge stated in Rodriquez, Civ. No. 09-0016-LEK-RLP (Doc. 93 at 55) (D. Haw. 2010), "Based on the plain language of the statutes, Plaintiffs' allegations suffice to state a cause of action under § 388-6." Id. at 55.  A departure "from the plain and unambiguous language of [a] statute cannot be justified without a clear showing that the legislature intended some other meaning . . . ." Singleton v. Liquor Com'n, County of Hawai'i, 140 P.3d 1014, 1024 (Haw. 2006) (internal citation and quotation marks omitted).  Unless the literal interpretation of a statute would "produce absurd or unjust results that are clearly inconsistent with the purposes and policies of the statute," it must be given effect. Kang v. State Farm Mut. Auto Ins. Co., 815 P.2d 1020, 1021-22 (Haw. 1991).  The meaning of sections 388-6 and 481B-14 is straightforward and apparent, and does not produce absurd or unjust results.  There is no clear indication that the legislature intended any other meaning for these statutes than their literal meaning.

Although it is unnecessary to consider the legislative history of section 481B-14 insofar as its meaning, in relation to the wage protections provided by section 388-6, is unambiguous, the Hawaii Supreme Court's ruling in Davis reveals that the statute's legislative history supports the right of employees to sue for violations of section 481B-14.  In Davis, the Hawaii Supreme Court

16

reviewed the legislative history of section 481B-14 at length and concluded: "[T]he legislative history of HRS § 481B-14 does not reflect an intent to preclude enforcement by employees." 228 P.3d at 312. Summarizing its review of the legislative history, the court stated:

> In sum, the legislative history . . . indicates that the legislature was concerned that when a hotel or restaurant withholds a service charge without disclosing to consumers that it is doing so, **both employees and consumers** can be negatively impacted. The legislature chose to address that concern by requiring disclosure and by authorizing enforcement of that requirement under HRS chapter 480. There is no clear indication in the legislative history that the legislature intended to limit enforcement to consumers, businesses, or competitors and to preclude enforcement by employees.

Id. at 314 (emphasis added). The legislative history of section 481B-14 reflects a desire to prevent service workers from being deprived of tip income. Id. To the extent that the legislative history of section 481B-14 is relevant to the question of whether employees may sue for unpaid wages under section 388-6 based on violations of section 481B-14, that legislative history, as interpreted by the Hawaii Supreme Court in Davis, provides support for the idea that employees may do so.

As has been emphasized, however, the starting point for statutory interpretation is the language of the statute itself. Mathewson v Aloha Airlines, Inc., 919 P.2d 969, 983 (Haw. 1996). Where a statute's meaning is plain and unambiguous, as here, there is no need to attempt to divine legislative intent based on the

17

various events that led to the statute's passage, the import of which may be unclear and open to wide-ranging interpretation. Four Seasons argues, for example, that the fact that the Legislature placed section 481B-14 within Chapter 480 rather than Chapter 388 compels an inference that the Legislature did not intend for employees to be able to assert a cause of action for unpaid wages under section 388-6 based on a violation of section 481B-14. This speculative inference of legislative intent proposes an interpretation that does violence to the language of the statutes themselves.

Four Seasons asks the Court to ignore the plain meaning of sections 388-6 and 481B-14 and to interpret these statutes in a contradictory manner that would lead to an absurd result. Under Four Seasons' construction, a "service charge" that is withheld from service employees without a clear disclosure to customers would not constitute tip income under Chapter 388 of the Hawaii Revised Statutes, even though such charges are expressly required to be tip income under H.R.S. § 481B-14. When the words of a law are unambiguous, any construction that "leads to an absurdity" must be rejected. H.R.S. § 1-15(3). Four Seasons' construction would require: (1) ignoring the plain language of the statues, (2) ignoring the fact that the statutes clearly address a similar subject matter and are therefore to be read "in pari materia" or with reference to each other, (3) ignoring evidence that the

18

legislature sought to protect service employees from losing tip income, and (4) disregarding the fact that at least three other courts, including one Hawaii state court, have concluded that employees may state a claim for unpaid wages under section 388-6 based on a violation of section 481B-14, while no court has ruled to the contrary.

In short, Chapter 380 of the Hawaii Revised Statutes provides employees with a cause of action for the withholding of wages, including tip income.   H.R.S. § 481B-14 requires hotels and restaurants to pay service charges to employees as tip income if they do not disclose their contrary practice to customers.

**H.R.S. § 481B-14 Is Not Preempted By Fair Labor Standards Act Regulations**

Four Seasons argues, in a footnote, that H.R.S. § 481B-14 is preempted by regulations implementing the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, that differentiate between a service charge and a tip.   Four Seasons cites 29 C.F.R. § 531.55, which states that a "compulsory charge for service . . . is not a tip."

To determine whether a federal law preempts a state law, a court's "sole task is to ascertain the intent of Congress." Pacific Merchant Shipping Ass'n v. Aubry, 918 F.3d 1409, 1415 (9th Cir. 1990) (internal citation and quotation marks omitted).   The "purpose behind the FLSA is to establish a national *floor* under

19

which wage protections cannot drop, not to establish absolute uniformity . . . ." Id. at 1425.  The fact that H.R.S. § 388-6, read in conjunction with H.R.S. § 481B-14, may provide greater wage protection to Hawaii workers than the FLSA presents no conflict with the FLSA's purpose.

Nor does an FLSA regulation providing that a compulsory service charge is not a tip conflict with H.R.S. § 481B-14.  H.R.S. § 481B-14 does not define "service charges" as tip income; it merely requires employers to distribute service charges as tip income unless the employer makes a clear disclosure to consumers that it will not do so.  This requirement does not conflict with FLSA regulations differentiating compulsory service charges from a tip.  The FLSA does not prohibit service charges from being distributed to employees as tip income.  Four Seasons points to no conflict between section 481B-14 and FLSA regulations such that H.R.S. § 481B-14 would be preempted.

**H.R.S. § 481B-14 Is Not Unconstitutionally Vague**

Four Seasons argues that H.R.S. § 481B-14 would be unconstitutionally vague if interpreted as requiring employers to pay service charges to employees as tip income.  Four Seasons points out that section 481B-14 does not expressly state which employees are entitled to receive the service charges as tip income.

H.R.S. § 481B-14 is not unconstitutionally vague. To constitute a violation of due process, a statute must be "so vague and indefinite as really to be no rule or standard at all." Paul v. Dept's of Transp., State of Haw., 168 P.3d 546, 651 (Haw. 2001) (quoting A.B. Small v. Am. Sugar Refining, 267 U.S. 233, 239 (1925). Section 481B-14 states that the service charge shall be distributed as "tip income." "Tip income" is not defined by the statute. As the dissent in Davis points out, however, the dictionary definition of a "tip" is a "gift or a usu[ally] small sum of money tendered in payment . . . for a service performed or anticipated." 228 P.3d at 331, (Acoba, J., dissenting).[4]

As H.R.S. § 481B-14 requires service charges to be distributed as tip income to employees, it is clear that service charges must be distributed to the employees who provided the relevant service (in keeping with the common, dictionary definition of a "tip"). Section 481B-14 "cannot reasonably be construed as allowing the employer to pick any employee to receive the monies in any amount." Id. (internal citation and quotation marks omitted); see also Rodriguez v. Starwood Hotels & Resorts, Civ. No. 09-0016-LEK-RLP

---

[4] The majority in Davis expressly declined to consider whether section 481B-14 is unconstitutionally vague, stating that it was an issue that "did not relate" to the certified question of whether the plaintiffs had standing under section 480-2(e) to bring a claim for damages for a violation of section 481B-14, and instead related to the "merits of such a claim." 228 P.3d at 308 n. 13. Justice Acoba, however, addressed the issue in his dissent, stating that "the constitutionality of the statute as disputed is obviously germane to the viability of the proceeding in federal court." Id. at 331 (Acoba, J., dissenting).

(Doc. 93) (D. Haw. 2010) ("The legislature's focus on protecting
employees who would otherwise be tipped clearly demonstrates that
§ 481B-14 was intended to provide protection for those specific
employees."); Tauese v. State, Dept. of Labor & Indus. Relations,
147 P.3d 785, 812 n. 27 (Haw. 2006) ("Because this term is easily
definable and allows a person of ordinary intelligence to obtain an
adequate description of the prohibited conduct, the statute is not
unconstitutionally   vague.").     H.R.S.   §   481B-14   is   not
unconstitutionally vague.


**H.R.S. § 481B-14 Does Not Deny Four Seasons Due Process**

Four Seasons argues that H.R.S. § 481B-14 denies it due
process to the extent it requires it to pay service charges to
employees, because the service charges "would be transformed as a
matter of law into property of the employees." (Defendant's
Opposition at 29 (Doc. 141-3)).  Four Seasons cites no authority
for this argument.  Requiring employers to pay service charges to
employees or to disclose otherwise to customers does not constitute
a due process violation.  Section 481B-14 does not automatically
transform service charges into property of employees; it permits
employers the option of disclosing to customers that service
charges will not be paid to employees.


**Four Seasons' Alternative Request To Certify a Question to the
Hawaii Supreme Court is Untimely and Unnecessary**

Four Seasons' alternative request to certify a question to the
Hawaii Supreme Court is untimely and unnecessary.  The meaning of
the relevant statutes is not ambiguous, and the courts that have
addressed the issue concluded that employees may assert a claim for
unpaid wages under H.R.S. § 388-6 based on violations of section
481B-14.  The Court finds persuasive the Hawaii state trial court
Judge ruling that the claim is valid in <u>Gurrobat v. HTH
Corporation, et al.</u>, Civ. No. 08-1-2528-12 (KKS) (Haw. Ct. 1st Cir.
2010).


**Four Seasons Has Waived Any Right To Compel Arbitration**

Finally, Four Seasons argues in a footnote that Plaintiffs'
claim is barred by mandatory arbitration clauses in some employee
agreements.  Four Seasons has waived any right to compel the
Plaintiffs to engage in arbitration. <u>See</u> <u>Van Ness Townhouses v. Mar
Industries Corp.</u>, 862 F.2d 754, 758-59 (9th Cir. 1988) ("[A] much
delayed demand for arbitration indicates a conscious decision to
continue to seek judicial judgment on the merits of the arbitrable
claims.").

This action was filed on November 21, 2008, approximately two
and a half years ago.  On January 30, 2009, Four Seasons filed a
Motion to Stay Proceedings and Compel Arbitration for Plaintiffs
Mark Apana, Elizabeth Valdez Kyne, and Thomas Perryman. (Doc. 33).
On February 25, 2009, Four Seasons voluntarily withdrew the Motion

without prejudice, stating that it would not seek to compel arbitration until after the Hawaii Supreme Court determined whether Plaintiffs Apana, Valdez Kyne, and Perryman have standing to pursue their claims. (Doc. 54 at 4). On March 29, 2010, the Hawaii Supreme Court issued its ruling. (See Doc. 92). On April 9, 2010, Four Seasons filed a Renewed Motion to Dismiss. (Doc. 94). Four Seasons did not argue in its Renewed Motion to Dismiss that any of the Plaintiffs are subject to mandatory arbitration clauses in their employment contracts. Four Seasons did not reassert the arbitration clause issue until after Plaintiffs filed a Motion for Partial Summary Judgment on April 4, 2011. In Four Seasons' May 10, 2011 Opposition to the Motion for Partial Summary Judgment, Four Seasons raised the argument in footnote. (Doc. 141).

The delay in raising the demand for mandatory arbitration results in Four Seasons having waived its right to enforce any mandatory arbitration clauses in Plaintiffs' employment contracts. See Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 925 (3d Cir. 1992) ("[W]e conclude that the defendants have waived whatever right they may have had to arbitration by actively litigating this case for almost a year prior to filing their motion to compel arbitration.").


## II. Elements of Claim for Liability on Count 5

An employer who withholds wages in violation of H.R.S. § 388-6

without equitable justification is liable to the affected employee. H.R.S. § 388-10. The burden of proving that there is equitable justification is on the employer. Arimizu v. Fin. Sec. Ins. Co., Inc., 679 P.2d 627, 631 (Haw. Ct. App. 1984).

In order to merit summary judgment on Plaintiffs' claim that Four Seasons is liable for unpaid wages under sections 388-6 and 388-10 based on a violation of section 481B-14, the Plaintiffs must present sufficient evidence to prove that Defendant Four Seasons: (1) employed Plaintiffs as food and beverage servers; (2) retained portions of food and beverage service charges while employing Plaintiffs; and (3) failed to clearly disclose to customers that the service charges would not be remitted in full to Plaintiffs. See H.R.S. § 386-1, 6, 10, 11; 481B-14.

### (1) Four Seasons Employed Plaintiffs as Food and Beverage Servers

H.R.S. § 388-6 prohibits an "employer" from withholding wages. H.R.S. § 388-1 defines "employer" as follows:

> "Employer" includes any individual, partnership, association, joint-stock company, trust, corporation, the personal representative of the estate of a deceased individual or the receiver, trustee, or successor of any of the same, employing any person, but shall not include the State or any political subdivision thereof or the United States.

To "employ" means "to permit or suffer to work." H.R.S. § 388-1.

Four Seasons disputes that it is or was Plaintiffs' employer. According to Four Seasons, 3900 WA Associates is the employer of

the employees at the Four Seasons Resort, Maui, and Hualalai Investors, LLC is the employer of the employees at the Four Seasons Resort, Hualalai. (Defendant's Statement of Facts at ¶ 15 (Doc. 140)).   Four Seasons states that these entities each separately controls its own payroll, has its own revenues, issues its own financial statements, makes its own human resources decisions, and has its own human resources department. (Id. at ¶ 16).   Four Seasons cites a Declaration of Larry Nishikawa, the director of human resources at the Maui resort, and a Declaration of Mitch Sipiala, senior director of human resources at the Hualalai resort. (Docs. 140-1; 140-5).

Although both Nishikawa and Sipiala declare that Defendant Four Seasons is not the employer of the resorts' employees, whether Four Seasons is their employer is a legal determination to be decided by the Court, based on the facts to the extent they are not genuinely in dispute.   As evidence that Four Seasons is and was Plaintiffs' employer, Plaintiffs cite employment agreements for the two resorts that indicate they were drafted by "Four Seasons Hotels and Resorts," include a history of "Four Seasons Hotels and Resorts," and state in capitalized letters, "I AM A FOUR SEASONS EMPLOYEE." (Docs. 140-2; 140-6).

Four Seasons concedes that it is contractually responsible for managing both the Maui and Hualalai resorts, and has the authority to do so. (Defendant's Answer at ¶ 3 (Doc. 126)).   Four Seasons

also admits that Plaintiffs have worked at the Maui and Hualalai resorts as food and beverage servers. (Id. at ¶ 1).  Four Seasons further admits that it has applied a service charge to food and beverage bills at the resorts and has retained a portion of it. (Id. at ¶ 5, 7).  Because Four Seasons concedes that it is contractually responsible for managing the resorts and has authority to do so, there is no genuine issue of fact that Four Seasons "permit[ed] or suffer[ed]" Plaintiffs to work, and was therefore their "employer" under H.R.S. § 388-1.

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., defines "employ" in a similar manner to H.R.S. § 388-1.  The FLSA states: "'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(g).  This definition was "intended to make the scope of employee coverage under the FLSA very broad." Johns v. Stewart, 57 F.3d 1544, 1557 (10th Cir. 1995).  Federal courts have interpreted the "suffer or permit to work" language to mean than an entity employs an individuals if, "as a matter of 'economic reality,' the entity functions as the individual's employer." Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 66 (2nd Cir. 2003) (internal citation omitted).  The "overarching concern is whether the alleged employer possessed the power to control the worker in question." Id. (internal citation and quotation marks omitted).

Here, Four Seasons does not dispute that it has or had the power and responsibility to control the Plaintiffs in their

capacity as banquet servers. Nor does Four Seasons dispute that it was the entity who retained portions of the service charges. It is clear, as a matter of economic reality, Four Seasons is or was the Plaintiffs' employer. Although additional entities may be involved in the operation of the Maui and Hualalai resorts and may also have or have had power to control the Plaintiffs as banquet servers, "a worker may be employed by more than one entity at the same time." Zheng, 355 F.3d at 66; see also Torres-Lopez v. May, 111 F.3d 633, 639-45 (9th Cir. 1997) (permitting claims under the FLSA against joint employers).

### (2) Four Seasons Retained Portions of Food and Beverage Service Charges While Employing Plaintiffs as Servers

Four Seasons admits that a preset service charge was applied to food and beverage bills at banquets at the resorts, and that it retained a portion of it. (Defendant's Answer at ¶¶ 5, 7 (Doc. 126)). There is no genuine dispute that Four Seasons applied a service charge to food and beverage bills at banquets while employing Plaintiffs as food and beverage servers, and retained a portion of it.

### (3) Four Seasons Failed to Clearly Disclose to Customers That the Service Charges Would Not be Remitted in Full to Plaintiffs

Plaintiffs claim that prior to the filing of this lawsuit, Four Seasons failed to include any disclosures to customers in its

banquet contracts that a portion of the service charge was not distributed to service employees. Plaintiffs cite a sample 2008 banquet contract (Exhibit 4 to Plaintiffs' Statement of Facts (Doc. 133-5)), and a sample 2004 banquet contract (Exhibit 5 to Plaintiffs' Statement of Facts (Doc. 133-6)). Plaintiffs also cite sample banquet event orders (documents listing the menu items and pricing for banquet event orders). (Exhibit 3 Plaintiffs' Statement of Facts (Doc. 133-4)). The sample order forms state that service charges will be applied, but do not indicate that a portion will be retained by Four Seasons and not distributed to the service employees. (Id.). Plaintiffs also cite sample 2004-2008 menus, which similarly state that food and beverage prices are subject to a service charge, but do not state that a portion of the service charge will be retained by Four Seasons and not distributed to the service employees. (Exhibits 6 and 7 to Plaintiffs' Statement of Facts (Docs. 133-7; 133-8)).

According to Plaintiffs, the "only disclosure made by Four Seasons prior to the filing of the lawsuit, that the entire service charge was not being distributed to service employees was that some banquet checks for the Maui Four Seasons, starting in late 2006, had writing in extremely fine print that stated: '(House is allocated 5.4% of Service Charge.)'" (Plaintiffs' Statement of Facts at ¶ 12 (Doc. 133)). Four Seasons disputes this contention on the ground that the phrase "extremely fine print" is "vague and

29

disparaging." (Defendant's Statement of Facts at ¶ 12 (Doc. 140)). But Four Seasons does not dispute that the statement as quoted appeared in fine print, was only on some banquet checks rather than all, only appeared on checks for the Maui resort and not the Hualalei resort, and that it made no other disclosures to customers that it retained a portion of the service charge applied to food and beverage bills prior to the filing this lawsuit. At the hearing on Plaintiffs' Motion for Partial Summary Judgment, Four Seasons conceded that "prior to October 2008 for Hualalai and prior to . . . August of 2006 at Maui, any notice to customers by Four Seasons would have been done verbally or based on knowledge of industry practice." (Transcript of June 21, 2011 Hearing at 11 (Doc. 155)).

There is therefore no genuine issue of fact that Four Seasons failed to clearly disclose to at least some customers that service charges would not be remitted in full to Plaintiffs. As Four Seasons has admitted that it retained portions of service charges without disclosing it to customers while employing Plaintiffs as food and beverage servers, Plaintiffs are entitled to **SUMMARY JUDGMENT** on their claim that Defendant Four Seasons Hotel, Limited is liable for unpaid wages under H.R.S. § 388-6 (Count 5). An issue of fact remains for trial as to the amount of Plaintiffs' resulting damages.

## CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment (Doc. 132) on their claim that Defendant Four Seasons Hotel, Limited is liable for unpaid wages under H.R.S. § 388-6 (Count 5) is **GRANTED.**

An issue of fact remains for trial as to the amount of Plaintiffs' resulting damages.


IT IS SO ORDERED.

DATED: August 26, 2011, Honolulu, Hawaii.



                                    /S/ Helen Gillmor
        _____
                              Helen Gillmor
                              United States District Judge




*DAVIS, et al. v. FOUR SEASONS HOTEL LIMITED, et al.;* Civil No. 08-00525 HG-BMK; **ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT.**