IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DARYL DEAN DAVIS; MARK APANA; ELIZABETH VALDEZ KYNE; EARL TANAKA; THOMAS PERRYMAN; DEBORAH SCARFONE; on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>FOUR SEASONS HOTEL LIMITED, dba FOUR SEASONS RESORT, MAUI and FOUR SEASONS RESORT, HUALALAI; MSD CAPITAL, INC.,<br><br>　　　　Defendants. | Civ. No. 08-00525 HG-BMK |

**ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION FOR CLASS CERTIFICATION**

On July 19, 2011, the Magistrate Judge issued a Findings and Recommendation for Class Certification. On August 2, 2011, Defendant Four Seasons Hotel, Limited filed an Objection. On August 16, 2011, Plaintiffs filed a Response to the Objection. The Magistrate Judge's Findings and Recommendation are **ADOPTED.**

**PROCEDURAL HISTORY**

On November 21, 2008, Plaintiffs filed a Class Action Complaint. (Doc. 1).

On January 12, 2009, Plaintiffs filed an Amended Class Action Complaint. (Doc. 13).

1

On January 30, 2009, Defendant Four Seasons Hotel, Limited filed a Motion to Dismiss. (Doc. 32).

On March 24, 2009, a hearing was held on Defendant's Motion to Dismiss. (See Doc. 53). The Court denied the Motion and ordered the parties to meet and confer in order to frame an appropriate question to the Hawaii Supreme Court regarding Plaintiffs' standing. (See Doc. 53).

On June 2, 2009, the Court certified the question to the Hawaii Supreme Court regarding Plaintiffs' standing to pursue their unfair competition claim under H.R.S. § 480-2(e) for a violation of H.R.S. § 481B-14. (Doc. 75).

On July 28, 2009, the Court directed the Clerk's Office to close the case administratively, while the matter was before the Hawaii Supreme Court. (Doc. 88).

On March 29, 2010, the Hawaii Supreme Court issued a ruling on the certified question. Davis, et al., v. Four Seasons Hotel Ltd, et al., 228 P.3d 303 (Haw. 2010). The Hawaii Supreme Court ruled that Plaintiffs have standing to pursue a claim unfair competition claim under H.R.S. § 480-2(e) for a violation of H.R.S. § 481B-14 if they sufficiently allege the nature of the competition that caused their injuries. Id.

On April 9, 2010, the Defendant filed a Motion to Reopen the Case. (Doc. 93).

On April 19, 2010, Plaintiffs filed a Statement of No

Opposition to Defendant's Motion to Reopen Case. (Doc. 100).

On May 6, 2010, the Court granted Defendant's Motion to Reopen Case. (Doc. 102).

On September 3, 2010, Plaintiffs filed a Second Amended Class Action Complaint. (Doc. 122).

On November 3, 2010, Defendant filed an Answer to the Second Amended Complaint. (Doc. 126).

On April 4, 2011, Plaintiffs filed a Motion to Certify Class. (Doc. 130).

On May 6, 2011, Defendant filed an Opposition. (Doc. 139).

On June 27, 2011, Plaintiffs filed a Reply. (Doc. 152).

On July 11, 2011, Magistrate Judge Barry Kurren held a hearing on Plaintiffs' Motion for Class Certification. (Doc. 165).

On July 19, 2011, Magistrate Judge Barry Kurren issued a Findings and Recommendation that Plaintiffs Motion for Class Certification be granted. (Doc. 167).

On August 2, 2011, Defendant filed an Objection. (Doc. 169).

On August 16, 2011, Plaintiffs filed a Response to Defendant's Objection. (Doc. 170).

On September 7, 2011, Defendant filed a Motion for Leave to File Supplemental Authority in support of its Objection. (Doc. 172).

On September 9, 2011, the Court issued a Minute Order granting the Motion for Leave to File Supplemental Authority. (Doc. 173).

On September 9, 2011, Defendant filed a Notice of Supplemental Authority. (Doc. 174).

On September 16, 2011, Plaintiffs filed a Response to the Notice of Supplemental Authority. (Doc. 178).

**BACKGROUND**

Plaintiffs are food and beverage servers who have worked at the Four Seasons Resort, Maui (the "Maui resort"), and the Four Seasons Resort, Hualalai (the "Hualalai resort"). (Second Amended Complaint at ¶ 1 (Doc. 122); Defendant's Answer at 3, ¶ 1 (Doc. 126)). Defendant Four Seasons Hotel, Limited (the "Four Seasons") is responsible for managing both resorts. (Defendant's Answer at ¶ 3 (Doc. 126); Plaintiffs' Reply in Support of Motion for Partial Summary Judgment at 16 (Doc. 144)). Defendant MSD Capital, Inc. has an ownership interest in the two resorts. (Second Amended Complaint at ¶ 4 (Doc. 122); Defendant's Answer at ¶ 4 (Doc. 126)). Defendant MSD Capital, Inc. has not appeared, and there is no evidence that it was ever served.

Plaintiffs claim that Four Seasons adds a "service charge" to resort customers' food and beverage bills, which ranges from 18 to 22 percent of the food and beverage bill total. (Plaintiffs' Statement of Facts at ¶¶ 2-3 (Doc. 133)). According to the Complaint, a portion of the service charge is distributed to services employees, and another portion is retained by Four

Seasons. (Id. at ¶ 4). Four Seasons does not dispute that resort customers are billed an 18 to 22 percent service charge, and that it retains a portion that is not distributed to service employees. (Defendant's Statement of Facts at ¶¶ 1-4 (Doc. 140)). Four Seasons disputes that it is responsible for this practice. (Id.). Four Seasons maintains that it does not "operate" the resorts on a "day-to-day basis." (Defendant's Statement of Facts at ¶ 1 (Doc. 140)). According to Four Seasons, the "day-to-day" operation of the Maui resort is performed by 3900 WA Associates, LLC, and the "day-to-day" operation of the Hualalai resort is performed by Hualalai Investors, LLC. (Defendant's Answer at ¶ 3 (Doc. 126)).

Plaintiffs' claims for relief are all based on an allegation that Four Seasons failed to disclose to customers, prior to the filing of this lawsuit, that the service charges were not remitted in full to the employees who serve the food and beverages. (Second Amended Complaint at ¶¶ 8-9 (Doc. 122); Plaintiffs' Statement of Facts at ¶ 5 (Doc. 133)). Plaintiffs maintain that customers are misled into believing that the entire service charge is distributed to the service employees, and that customers who would otherwise be inclined to leave an additional gratuity do not do so. (Second Amended Complaint at ¶ 9 (Doc. 122)).

**STANDARD**

Portions of a Magistrate Judge's Findings and Recommendation

to which an objection is made are reviewed do novo. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Local Rules 72.5, 74.2; Stow v. Murashige, 288 F.Supp.2d 1122, 1127 (D. Haw. 2003). The district court may "accept those portions of the Magistrate Judge's findings and recommendation that are not objected to if it is satisfied that there is no clear error on the face of the record. Stow, 288 F.Supp.2d at 1127; see also Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974).

**ANALYSIS**

Defendant Four Seasons objects to the Findings and Recommendation for Class Certification (hereinafter "F&R") on the following grounds: (1) the F&R does not exclude employees who signed arbitration agreements; (2) a class composed of casual employees lacks sufficient numerosity or "impact"; (3) what each customer knew about the disposition of the service charge requires an individualized inquiry into customer knowledge; and (4) the F&R excludes managerial employees from the class, but permits managerial employees to submit evidence regarding their right to participate in the service charge.

**1.   Employees Who Signed Arbitration Agreements**

Four Seasons argues that the F&R errs by not excluding from the class employees who signed arbitration agreements. According

to Four Seasons, 24 of the members of the putative class signed an "EmPact" agreement that requires their claims to be arbitrated on an individual rather than class-wide basis. Four Seasons maintains that three of the named Plaintiffs, Mark Apana, Elizabeth Valdez Kyne, and Thomas Perryman, are employees who signed the arbitration agreement. Plaintiffs allege that the total putative class contains more than 100 members.

Federal Rule of Civil Procedure 23 requires that a proposed class have sufficient numerosity, commonality, typicality, and adequate representation. See Wal-Mart Stores, Inc. v. Dukes, — S.Ct. —, 2011 WL 2437013, at *6 (2011). Rule 23 does not require, however, that the class exclude any members against whom the defendant might be able to assert a unique defense. Id.; Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010). Rule 23 only requires that common issues predominate. See Dukes, 2011 WL 2437013.

The possibility that Four Seasons may attempt to enforce an arbitration agreement entered into by a portion of the members of the class does not stand in the way of class certification. Several courts have addressed the effect of arbitration agreements among members of a putative class, and concluded that they do not bar class certification. As the court explained at length in Herrera v. LCS Fin. Serv. Corp., 372 F.R.D. 666, 681 (N.D. Cal):

> The fact that some members of a putative class may have signed arbitration agreements or released claims against

7

> a defendant does not bar class certification. Other
> courts presented with this issue have held that "class
> certification should not be denied merely because some
> class members may be subject to the defense that their
> claims are barred by valid documents releasing the
> defendant from liability." Coleman v. GMAC, 220 F.R.D.
> 64, 91 (N.D. Tenn. 2004); see also Bittinger v. Tecumseh
> Products Co., 123 F.3d 877, 884 (6th Cir. 1997). The
> Ninth Circuit addressed this issue as it relates to a
> statute of limitations defense and held that "the
> presence of individualized issues of compliance with the
> statute of limitations here does not defeat the
> predominance of the common questions." Cameron v. E.M.
> Adams & Co., 547 F.2d 473, 478 (9th Cir. 1976).

See also Midland Funding, LLC v. Brent, 2010 WL 4628593, at *4 (N.D. Ohio 2010). The F&R does not err in finding that the presence of arbitration agreements with 24 members of a putative class of over 100 individuals does not bar class certification.

**A. Potential Waiver of Right to Arbitrate**

Plaintiffs also argue that Four Seasons waived its right to compel arbitration against putative class members by extensively litigating this action. Four Seasons maintains that it could not have waived its right to compel arbitration against members of the putative class because the class has not yet been certified.

Four Seasons filed a Notice of Supplemental Authority in which it cites three cases in support. In Laguna v. Coverall N. Am. Inc., 2011 WL 3176460, at *8 (S.D. Cal. 2011), the plaintiffs filed a motion to compel discovery of arbitration agreements entered into by putative class members. The court denied the motion, reasoning that because the defendants had not moved to compel arbitration

8

against the absent class members, there was no basis to require production of the arbitration agreements. In dicta, the court proceeded to state: "In fact, Defendants cannot move to compel arbitration against putative class members prior to certification of a class." Four Seasons relies on this statement to support its position that it cannot move to compel arbitration against putative members of a class until after the class is certified. Four Seasons also cites In re TFT-LCD (Flat Panel) Antitrust Litig., 2011 WL 1753784, at *4 (N.D. Cal. 2011), in which the court ruled that the defendants did not waive their right to arbitrate with unnamed members of a class. Although the court found the issue "extremely close," it did "not appear to the Court that defendants could have moved to compel arbitration against such entities prior to the certification of a class [in the case] because . . . 'putative class members are not parties to an action prior to class certification.'" Id. (quoting Saleh v. Titan Corp., 353 F.Supp.2d 1087, 1091 (S.D. Cal. 2004).

None of these cases ruled that arbitration agreements among members of a putative class bar class certification. The possibility that Four Seasons may be able to compel unnamed members of the putative class to arbitrate in the future does not preclude class certification. See Herrera v. LCS Fin. Serv. Corp., 372 F.R.D. 666, 681 (N.D. Cal); Midland Funding, LLC v. Brent, 2010 WL 4628593, at *4 (N.D. Ohio 2010). The F&R does not err in finding

that the possibility that Four Seasons may be able to enforce arbitration agreements against 24 members of a putative class of over 100 individuals does not bar class certification.

**2.   Class Composed Only Of Casual Employees**

Four Seasons argues that if the 24 employees who signed arbitration agreements are excluded from the class, the remaining class of 64 casual employees lacks sufficient numerosity because the impact of each employee's casual employment is de minimus. Four Seasons argues that these smaller claims would be better handled on an individualized basis.

The F&R does not err in failing to exclude the 24 employees who signed arbitration agreements.  Four Seasons' argument is therefore moot.

Even if the class were to exclude the 24 employees who signed arbitration agreements, the fact that the claims of the remaining 64 casual employees would be small is not grounds to deny class certification.  A class action is the appropriate vehicle for handling numerous small claims requiring the resolution of similar issues. See, e.g., Sullivan v. Kelly Servs., Inc., 268 F.R.D. 356, 365 (N.D. Cal. 2010) ("The small amount of money at issue in each individual case makes it highly unlikely that individual litigation would ever be undertaken, but a class action would offer those with small claims the opportunity for meaningful redress.").

### 3. Individualized Inquiry Into Customer Knowledge

Four Seasons argues that a critical issue in this case is what each customer knew and understood about the disposition of the service charges. Four Seasons maintains that some customers were aware that the service charge was not being distributed in full to employees. Determining what each customer knew, Four Seasons argues, requires an individualized, case by case inquiry that is not appropriate for a class action.

An individualized inquiry into the knowledge of individual customers is not necessary to determine whether Four Seasons violated H.R.S. § 481B-14. H.R.S. 481B-14 states that hotels must distribute service charges directly to their employees as tip income or "clearly disclose to the purchaser of the services that the service charge is being used to pay costs or expenses other than wages and tips of employees." Section 481B-14 requires a clear disclosure; it does not require customer knowledge. As the statute simply requires disclosure, there is no need to make an inquiry into each individual customer's knowledge about the disposition of the service charge.

### 4. Managerial Employees Excluded From Class

Four Season argues that the F&R errs in excluding managerial employees from the class. Four Seasons argues that H.R.S. § 481B-14 does not expressly state which employees are entitled to receive

11

the service charges as tip income.

The F&R does not err in excluding managerial employees from the class.  H.R.S. § 481B-14  481B-14 states that the service charge shall be distributed as "tip income."  As section 481B-14 requires service charges to be distributed as tip income to employees, it is apparent that service charges must be distributed to the employees who provided the relevant service (in keeping with the common, dictionary definition of a "tip").

The legislative history of H.R.S. § 481B-14 clearly reflects an intent to protect service employees who would otherwise receive tips.  According to a report from the House Committee on Labor & Public Employment, section 481B-14 was originally intended "to protect employees who receive or may receive tips or gratuities."  H. Stand. Comm. Rep. No. 479-00, in 2000 House Journal, at 1155.  A report from the Senate Committee on Commerce & Consumer Protection similarly states that the purpose of section 481B-14 was to prevent employees who otherwise receive tips from being deprived of that money:

> [M]oneys collected as service charges are not always distributed to the employees as gratuities and are sometimes used to pay the employer's administrative costs.  Therefore the employee does not receive the money intended as gratuity by the customer, and the customer is misled into believing that the employee has been rewarded for providing good service.

S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal, at 1287.

Several courts have reviewed the legislative history of H.R.S. § 481B-14 and concluded that it was intended to protect service employees. In <u>Rodriquez v. Starwood Hotels & Resorts</u>, Civ. No. 09-0016-LEK-RLP (Doc. 93) (D. Haw. 2010), the court stated "the legislature's focus on protecting employees who would otherwise be tipped clearly demonstrates that § 481B-14 was intended to provide protection for those specific employees." In <u>Gurrobat v. HTH Corporation, et al.</u>, Civ. No. 08-1-2528-12 (KKS) (Haw. Ct. 1st Cir. 2010), a Hawaii state court similarly concluded that "the legislative history behind HRS 481B-14 demonstrates [the] legislature's intent to protect service employees who provide direct service to customers and not managerial employees."

As a result of the clear legislative intent to protect service employees, courts that have considered class certification with respect to claims based on H.R.S. § 481B-14 have excluded managerial employees from the class. <u>See</u> <u>Gurrobat</u>, Civ. No. 08-1-2528-12; <u>Villion v. Marriott Hotel Serv. Inc.</u>, 2011 WL 2160483, at *6-7 (D. Haw. 2011); <u>Kyne v. Ritz-Carlton Hotel Co., L.L.C.</u>, Civ. No. 08-00530 ACK-RLP (Doc. 93) (July 18, 2011); <u>Wadsworth v. KSL Grand Wailea Resort, Inc.</u>, Civ. No. 08-00527 ACK-RLP (Doc. 150) (July 18, 2011).

The F&R does not err in excluding managerial employees from the class.

**CONCLUSION**

The Magistrate Judge's Findings and Recommendation for Class Certification (Doc. 167) are **ADOPTED** as the Order of this Court.

IT IS SO ORDERED.

DATED: September 30, 2011, Honolulu, Hawaii.



/S/ Helen Gillmor
--------
Helen Gillmor
United States District Judge

*DAVIS, et al. v. FOUR SEASONS HOTEL LIMITED, et al.;* Civil No. 08-00525 HG-BMK; **ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION FOR CLASS CERTIFICATION.**